No. 14-2101

IN THE

# United States Court of Appeals

## FOR THE THIRD CIRCUIT

NORTH JERSEY BRAIN & SPINE CENTER,
*Plaintiff-Appellant,*

v.

AETNA, INC.,
*Defendant-Appellee.*

On Interlocutory Appeal from the United States District Court
for the District of New Jersey | Civil Action No. 2:13-05286

**BRIEF AND APPENDIX (VOLUME I) OF PLAINTIFF-
APPELLANT NORTH JERSEY BRAIN & SPINE CENTER**

Eric D. Katz, Esq.
David M. Estes, Esq.
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
T: 973-228-9898
F: 973-228-0303
E: ekatz@mskf.net
*Counsel for Plaintiff-Appellant North Jersey Brain
& Spine Center*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................. iii

TABLE OF AUTHORITIES ................................................................. iv

INDEX OF THE APPENDIX .............................................................. ix

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF ISSUE ................................................................... 2

STATEMENT OF RELATED CASES ..................................................... 3

STATEMENT OF THE CASE............................................................... 4

STANDARD OF REVIEW ................................................................. 7

SUMMARY OF ARGUMENT .............................................................. 8

ARGUMENT

AN ASSIGNMENT OF THE RIGHT TO PAYMENT
IS SUFFICIENT TO PROVIDE A HEALTHCARE
PROVIDER DERIVATIVE ERISA STANDING

I. Statutory Standing under § 502(a) of ERISA........................................ 12

II. Derivative Standing under ERISA................................................... 13

III. The District of New Jersey is Split on What Type of
Assignment is Needed to Confer Derivative Standing............................ 16

IV. An Assignment of the Right to Payment is Sufficient to Confer Standing...... 19

V. The Right to Payment Incorporates Enforcement of that Right ................... 26

VI. A Provider's Derivative Standing is Not Forfeited by an Assignment that
Retains the Right to Bill the Patient .............................................. 29

CONCLUSION.............................................................................. 33

i

COMBINED CERTIFICATIONS ............................................................................34

## CORPORATE DISCLOSURE STATEMENT OF
## NORTH JERSEY BRAIN & SPINE CENTER

Plaintiff-appellant North Jersey Brain & Spine Center ("NJBSC") is not a publicly owned corporation. Fed. R. App. P. 26.1; 3d Cir. L.A.R. 26.1.1.

# TABLE OF AUTHORITIES

**Page**

## CASES

*Access Mediquip, L.L.C. v. UnitedHealth Care Ins. Co.*,
698 F.3d 229 (5th Cir. 2012) ................................................22

*Ambulatory Surgical Ctr. of N.J. v. Horizon Healthcare Servs.*,
No. 07–2538, 2008 WL 8874292 (D.N.J. Feb. 21, 2008)......................18

*Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69
(3d Cir. 2011) ................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................8

*Boggs v. Boggs*, 520 U.S. 833 (1997) ................................................15

*Burstein v. Retirement Acct. Plan For Emps. of Allegheny Health
Educ. & Research Foundation*, 334 F.3d 365 (3d Cir. 2003) ......................26

*Bush v. Lucas*, 462 U.S. 367 (1983) ................................................27

*Cagle v. Bruner*, 112 F.3d 1510 (11th Cir. 1997)................................................15,21,24

*CardioNet, Inc. v. Cigna Health Corp.*, --- F.3d ---,
2014 WL 1778149 (3d Cir. May 6, 2014) ................................................*passim*

*City of Hope Nat. Med. Ctr. v. HealthPlus, Inc.*,
156 F.3d 223 (1st Cir. 1998) ................................................15

*Common Cause of Penn. v. Pennsylvania*, 558 F.3d 249
(3d Cir. 2009) ................................................8

*Conn. State Dental Ass'n v. Anthem Health Plans*,
591 F.3d 1337 (11th Cir. 2009)................................................21,28

*Cromwell v. Equicor–Equitable HCA Corp.*,
44 F.2d 1272 (6th Cir. 1991) ................................................15,25

*Davis v. Browning-Ferris, Inc.*, No. 97-8114, 1998 WL 964190
(E.D. Pa. Dec. 2, 1998) ........................................................................29

*Demaria v. Horizon Healthcare Servs., Inc.,*
No. 11–7298, 2012 WL 5472116 (D.N.J. Nov. 9, 2012) ..................... 7,20

*Edwards v. Horizon Blue Cross Blue Shield of N.J.*, No. 08–6160,
2012 U.S. Dist. LEXIS 105266 (D.N.J. June 4, 2012)........................ 7,18

*Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001) ....................27

*Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131
(3d Cir. 2012) ...................................................................................25

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ......................8

*Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792
(D.N.J. 2011)............................................................................*passim*

*Giacalone Healthcare, Inc. v. Highmark Blue Cross Blue Shield,*
No. 3:11–2331, 2013 WL 5707455 (M.D. Pa. Oct. 18, 2013) ................29

*Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of
N.J., Inc.*, No. 06-0462, 2007 WL 4570323 (D.N.J. Dec. 27, 2007).....................18

*Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300
(3d Cir. 2008) ...................................................................................14

*Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569
(5th Cir. 1992) .......................................................................*passim*

*Hobby v. U.S.*, 468 U.S. 339 (1984) ......................................................27

*I.V. Servs. v. Inn Devel. & Mgmt.*, 7 F. Supp. 2d 79
(D. Mass. 1998)............................................................................23,31

*I.V. Servs. v. Inn Devel. & Mgmt.*, 82 F.3d 51 (1st Cir. 1999) .............23,30,31

*I.V. Servs. of Am., Inc. v. Trs. of Am. Consulting Eng'rs Council Ins.
Trust Fund*, 136 F.3d 114 (2d Cir. 1998) ...........................................14

*Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337
  (3d Cir. 2013) ........................................................................1

*Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698 (7th Cir. 1991) ..............15,25

*Krishna v. Colgate Palmolive Co.*, 7 F.3d 11 (2d Cir. 1993) ........................16

*Lerman v. Joyce Inter'l, Inc.*, 10 F.3d 106 (3d Cir. 1993)..........................29

*Lutheran Med. Ctr. of Omaha, NE v. Contractors, Laborers,
  Teamsters & Eng'rs Health & Welfare Plan*, 25 F.3d 616
  (8th Cir. 1994)........................................................15,16,25

*Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966
  (8th Cir. 2002) .....................................................................15

*Miller v. Rite Aid Corp.*, 334 F.3d 335 (3d Cir. 2003) ...............................8

*MHA, LLC v. Aetna Health, Inc.*, No. 12–2984,
  2013 WL 544022 (D.N.J. Feb. 7, 2013) ("*MHA I*").....................20,27,31,32

*MHA, LLC v. Aetna Health, Inc.*, No. 12–2984,
  2013 WL 705612 (D.N.J. Feb. 25, 2013) ("*MHA II*") ....................6,20,27

*Middlesex Surgery Ctr. v. Horizon*, No. 13–112,
  2013 WL 775536 (D.N.J. Feb. 28, 2013)..................................20,27

*Misic v. Bldg. Serv. Emps. Health & Welfare Trust*,
  789 F.2d 1374 (9th Cir. 1986) .......................................15,16,17,25

*Montefiore Med. Ctr. v. Teamsters Local 272*,
  642 F.3d 321 (2d Cir. 2011) .............................................24,29,31

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, No. 13–05286,
  2014 WL 895407 (D.N.J. March 06, 2014)......................................20

*N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*,
  No. 10–4260, 2011 WL 4737067 (D.N.J. June 30, 2011),
  *adopted by*, 2011 WL 4737063 (D.N.J. Oct. 6, 2011)....................18,28,30

*N. Jersey Brain & Spine Ctr. v. St. Peter's Univ. Hosp.*,
   No. 13–74, 2013 WL 5366400 (D.N.J. Sept. 25, 2013)................................7,18,19

*NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield*
   *of N.J., Inc.*, 979 F. Supp. 2d 513 (D.N.J. 2013)..........................................20,30

*Pascack Valley Hosp. v. Local 464A UFCW Welfare*
   *Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004)........................................13

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ...........................8

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002)..............................2

*Premier Health Ctr., P.C. v. UnitedHealth Group*,
   No. 11–425, 2012 WL 1135608 (D.N.J. April 4, 2012)................................18,19

*Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901
   (M.D. Tenn. 2013) .............................................................................28

*Psychiatric Inst., Inc. v. Conn. Gen. Life Ins. Co.*,
   780 F. Supp. 24 (D.D.C. 1992) ..........................................................15

*St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of*
   *Kansas, Inc.*, 49 F.3d 1460 (10th Cir. 1995) ..............................15,17,24,25

*Sys. Council EM-3 v. AT&T Corp.*, 159 F.3d 1376 (D.C. Cir. 1998) ...............15

*Tango Trans. v. Healthcare Fin. Servs. LLC*,
   322 F.3d 888 (5th Cir. 2003) .........................................................*passim*

*Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.*,
   No. 06-928, 2007 WL 2416428 (D.N.J. Aug. 20, 2007)............................18,19,28

*Yarde v. Pan Am. Life Ins. Co.*, 67 F.3d 298 (4th Cir. 1995) ...........................15,25

## STATUTES

ERISA § 502(a) ...................................................................6,13,14,18,21

28 U.S.C. § 1292(b) ...........................................................................1,7

29 U.S.C. § 1001(b) ............................................................................16

29 U.S.C. § 1002(8) ....................................................................1,13,14

29 U.S.C. § 1132(a) ........................................................................1,13

29 U.S.C. § 1331...................................................................................1

## OTHER SOURCES

Fed. R. Civ. P. 12(b)(6).................................................................2,6,8

Fed. R. App. P. 5(d)(2) ..................................................................ix,7

Fed. R. App. P. 26.1.......................................................................2,7

3d Cir. L.A.R. 26.1.1 ........................................................................ii

3d Cir. L.A.R. 28.1(a)(2) ..............................................................3,4

S. Rep. No. 127, 93d Cong., 2d Sess., 3 (1974), *reprinted in*
   1974 U.S.C.C.A.N. 4639 ...............................................................24

## INDEX OF THE APPENDIX

### VOLUME I

History of CM/ECF Docket Entries from the U.S. District Court
for the District of New Jersey, Case No. 2:13-05286 ..........................................PA1-2

Order of the U.S. Court of Appeals for the Third Circuit Granting Leave
to Appeal (which is the Notice of Appeal[1]) ........................................ PA3

Order of the U.S. District Court Certifying this Appeal
pursuant to § 1292(b) and Fed. R. App. P. 5(a)(3) ...........................................PA4-6

Order of the U.S. District Court Dismissing Plaintiff NJBSC's
Complaint pursuant to Fed. R. Civ. P. 12(b)(6) ........................................ PA7

Opinion of the U.S. District Court in Support of the Court's
Order of Dismissal of *NJBSC v. Aetna*, Case No. 2:13-05286............................PA8-10

### VOLUME II

Defendant Aetna's Notice of Motion to Dismiss  ..................................................PA11-12

Plaintiff  NJBSC's Complaint and Ex. A of the Complaint ................................PA13-23

---

[1]    *See* Fed. R. App. P. 5(d)(2)

## STATEMENT OF JURISDICTION

**A.    Subject-Matter Jurisdiction**

This action was brought under the Employee Retirement Income Security Act of 1974 ("ERISA") to recover benefits due under plans administered or controlled by defendant Aetna Life Insurance Co., Inc. ("Aetna") for services rendered by plaintiff NJBSC.  (PA8; PA13-17).[2]  Aetna's plans are "employee welfare benefit" plans within the meaning of ERISA.  *Id.*; *see* 29 U.S.C. § 1002(1).  This Court, therefore, has federal question jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.  *See* 29 U.S.C. § 1132(a)(1)(B).

**B.    Appellate Jurisdiction**

This Court "ha[s] jurisdiction to review an interlocutory order when a district court certifies in writing that its order involves 'a controlling question of law as to which there is substantial ground for difference of opinion.'"  *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 340 n.4, 344-45 (3d Cir. 2013) (quoting 28 U.S.C. § 1292(b)).  On March 19, 2014, the district court issued an order pursuant to 28 U.S.C. § 1292(b) certifying that there is a "split" in the District of New Jersey regarding a controlling question of law.  (PA5).  This Court entered an order on April 11, 2014 granting NJBSC permission to file this appeal.  (PA3).

---

[2] "PA" indicates Plaintiff's Appendix.

1

## STATEMENT OF ISSUE

What type of assignment is sufficient for a participant or beneficiary of an ERISA plan to confer derivative standing on her healthcare provider?

**Where preserved**: This issue was raised and argued in the parties' briefing on Aetna's motion to dismiss, (PA11; *see* Parties' briefs on Def's Mot. to Dismiss *available at* D.E. 5 and 7),[3] and expressly addressed in the district court's decision that is the subject of this appeal, (PA8-9). *See* 3d Cir. L.A.R. 28.1(a)(1).

---

[3] "D.E." refers to the electronic docket entry where the referenced pleading or document is located on PACER/ECF under District of New Jersey, Civil Action No. 2:13-05286.

## STATEMENT OF RELATED CASES

Plaintiff NJBSC is not aware of any other related cases and this case has not been before this Court previously.  3d Cir. L.A.R. 28.1(a)(2).

However, there is a pending appeal in the Third Circuit, *American Chiropractic Association vs. American Specialty Health, Inc.*, Appellate No. 14-1832, -- F. Supp. 2d ---, 2014 WL 1301943, at *7-9 (E.D. Pa. March 27, 2014), that raises the legal question regarding what type of assignment is required to confer derivative ERISA standing on a healthcare provider.

# STATEMENT OF THE CASE[4]

Plaintiff-appellant NJBSC is a medical practice located in New Jersey that specializes in neurosurgical treatment. (PA13-15). NJBSC provided preauthorized and medically necessary neurosurgical treatment to three patients who were "members" (*i.e.*, participants) of ERISA healthcare plans administered or controlled by defendant-appellee Aetna and who were entitled to benefits under their respective plans. *Id.*

Each of the plan members who received treatment executed an authorization and assignment to NJBSC. (PA15; PA8). The assignments are identical. (PA20-23). Each assignment of benefits is titled,

## INSURANCE AUTHORIZATION AND ASSIGNMENT,

and provides in pertinent part as follows:

> I hereby assign to [NJBSC] all payments for medical services rendered to myself or my dependents....

*Id.*

NJBSC is an out-of-network provider, *i.e.*, a provider who does not have a contract with Aetna for reimbursement at a negotiated rate. (PA13). When NJBSC submitted claims for reimbursement, Aetna significantly underpaid or did

---

[4]    Because this is an appeal from a dismissal under Rule 12(b)(6), this Court "accept[s] all factual allegations as true, constru[ing] the complaint in the light most favorable to the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002).

not pay for the services rendered. (PA14-15; *see* PA8). NJBSC then appealed the underpayments/non-payments. (PA15). After Aetna's internal appeal process was exhausted or had become futile, NJBSC filed a complaint in the Superior Court of New Jersey against Aetna alleging that its underpayments/non-payments were violations of the terms of the healthcare plans pursuant to § 502(a) of ERISA. (PA13, 15). Aetna removed NJBSC's lawsuit to the District of New Jersey and promptly moved to dismiss the complaint for a lack of standing under ERISA. (PA8; PA11-12; *see also* Def. Notice of Removal *available at* D.E. 1).

On March 6, 2014, the Honorable William J. Martini, U.S.D.J. entered an order dismissing plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6), (PA7), holding that an assignment of the right to payment is "insufficient" to confer derivative ERISA standing:

> Although the Third Circuit has not directly addressed the issue, numerous courts in this district have held that a health care provider has standing to sue under ERISA where a beneficiary or participant has assigned her right to benefits under a plan to the provider.... This district is split, however, on what type of assignment is necessary to confer derivative standing. Some judges, including myself, have found that more than the mere right to receive payment is needed. *See, e.g., MHA, LLC v. Aetna Health, Inc.*, No. 12-2984, 2013 WL 705612, at *3 (D.N.J. Feb. 25, 2013) (stating that any purported assignment must "encompass the patient's legal claim to benefits under the plan"); *Demaria v. Horizon Healthcare Servs., Inc.*, Civ. No. 11–7298, 2012 WL 5472116, at *4 (D.N.J. Nov. 9, 2012) (noting that the scope of the assignment is critical to determining standing). Other judges, including judges considering the exact language at issue in this case, have found that the right to recover payment is enough. *See N. Jersey Brain & Spine Ctr. v. St. Peter's Univ. Hosp.*, No. 13-

74, 2013 WL 5366400 (D.N.J. Sept. 25, 2013) (finding that an
assignment containing the same language as the assignment at issue
here was adequate); *Edwards v. Horizon Blue Cross Blue Shield of
N.J.*, No. 08-6160, 2012 U.S. Dist. LEXIS 105266 (D.N.J. June 4,
2012) ("Accordingly, the assignment of the right to reimbursement
here confers derivative standing under ERISA.").

This Court remains persuaded that <u>more than the right to
payment is necessary to confer derivative standing under ERISA</u>.
Rather, <u>the assignment must include the patient's legal claim to
benefits under the plan</u>.  <u>The Assignment Form here, which includes
only the right to payment … is therefore insufficient</u>.

(PA9) (emphasis added) (internal citations omitted).

On March 19, 2014, the district court issued an order pursuant to 28 U.S.C. §
1292(b) granting NJBSC permission to file a petition for permission to appeal in
the Third Circuit.  In so doing, the court expressly found that "this district is split …
on what type of assignment of benefits is necessary to confer [ERISA] derivative
standing." (PA4-6).

On April 11, 2014, the Court of Appeals for the Third Circuit entered an
order granting NJBSC permission to file this appeal of the order dismissing
NJBSC's complaint for lack of standing, and which also serves as the Notice of
Appeal.   (PA3; *see* Fed. R. App. P. 5(d)(2); Notice of Interlocutory Appeal
*available at* D.E. 15).

# STANDARD OF REVIEW

The standard of review for a district court decision dismissing a complaint for lack of standing is *de novo*. *Common Cause of Penn. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009); *Miller v. Rite Aid Corp.*, 334 F.3d 335, 340 (3d Cir. 2003). "A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim." *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73 (3d Cir. 2011). The standard of review for a district court decision dismissing a complaint for failure to state a claim is *de novo*. *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (failure to state a claim).

A motion to dismiss under Rule 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Plaintiff must plead "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). However, the complaint "does not need detailed factual allegations." *Twombly*, 550 U.S. at 555.

## SUMMARY OF ARGUMENT

Plaintiff-appellant NJBSC, a medical practice group, respectfully submits this brief to appeal the district court's order dismissing its complaint for lack of standing to bring an ERISA enforcement action against defendant-appellee Aetna. NJBSC rendered neurosurgical services to three individuals who are members of ERISA health plans administered or controlled by Aetna. When Aetna grossly underpaid, NJBSC filed suit by virtue of assignments by the plan members. The district court below erroneously dismissed plaintiff's complaint concluding that the patients' assignments of the right to payment are insufficient to confer standing.

Significantly, every circuit court that has considered this issue has concluded that an assignment of the right to payment is sufficient to confer derivative ERISA standing on a healthcare provider. Specifically, the First, Fifth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits have set a low threshold for standing because such a standard is critical to ensuring that participants and beneficiaries of ERISA plans are able to leverage the resources and expertise of their physicians and other healthcare providers to obtain the full benefits to which they are entitled under their healthcare plans. Historically, the District of New Jersey also followed this rule and permitted a provider to obtain standing by way of an assignment of the right to payment.

8

However, beginning with *Franco v. Connecticut General Life Insurance Co.*, 818 F. Supp. 2d 792 (D.N.J. 2011), some judges in the district have departed from the established rule and imposed a new and more stringent standard that requires providers to produce an assignment at the pleading stage that demonstrates a patient relinquished all plan rights and benefits including the right to sue. *Franco*'s new interpretation of derivative standing provides that an assignment of the right to payment is insufficient to confer standing, as is an assignment that preserves a provider's right to bill the patient the difference between the billed charge and the amount reimbursed by the insurer when permitted by law and contract.

In this case, the district court erred by following *Franco* and holding that NJBSC lacked standing to enforce the patients' rights under the Aetna plans merely because the assignments did not expressly authorize NJBSC to file suit or contain some other unspecified "magic words" that would convey a sufficient quantum of the patient's rights under ERISA.

*Franco* and its progeny are flawed. Every court of appeals that has considered standing by virtue of an assignment of the right to payment has held that such an assignment without more is sufficient. The breadth of an assignment is relevant to what <u>type</u> of claims a provider may sue upon, <u>not</u> whether a provider has standing to sue at all. In addition to ignoring unanimous federal appellate

precedent, *Franco*'s interpretation of derivative standing undermines the twin purposes of ERISA: to maximize the delivery of healthcare to patients and to maintain a uniform and simple process for obtaining plan benefits.

The impact of *Franco*'s heightened standing requirement is clearly adverse to Congress' intent that ERISA be construed to expand and enhance access to healthcare and relieve the burden on patients:

> [D]enying derivative standing to health care providers would harm participants or beneficiaries because it would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them up-front....
>
> [P]arties ... will only be willing to [accept] an assignment ... if they can be assured that they will be afforded standing to sue for reimbursement.... [R]ather than harming participants of ERISA-governed welfare plans, extending [derivative standing to medical providers] will almost surely benefit [patients].

*Tango Trans. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 894 (5th Cir. 2003) (quotation marks and citations omitted). *Accord CardioNet, Inc. v. Cigna Health Corp.*, --- F.3d ---, 2014 WL 1778149, at *11 (3d Cir. May 6, 2014) ("the assignment of ERISA claims to providers serves the interests of patients by increasing their access to care"). Further, *Franco*'s reasoning is at direct odds with the bedrock principle that a contractual right necessarily incorporates the right to enforce it in court.

Finally, *Franco*'s conclusion that a "balance billing" provision in an assignment agreement invalidates derivative standing should be rejected because it

is contrary to precedents holding otherwise. *Franco* is predicated on a misunderstanding of how billing functions in the healthcare industry and presumes that a provider's general right to bill a patient necessarily results in a "double recovery." However, whether a provider in a particular case actually collected money from a patient prior to filing an ERISA enforcement action is one of several questions of fact requiring discovery; thus, a "balance billing" provision cannot be a basis for denying standing on the pleadings.

In sum, NJBSC respectfully asks that this Court adopt the rule – as established by precedents of the First, Fifth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits – that an assignment of the right to payment without more is sufficient to confer derivative standing under ERISA.

**ARGUMENT**

**AN ASSIGNMENT OF THE RIGHT TO PAYMENT
IS SUFFICIENT TO PROVIDE A HEALTHCARE
PROVIDER DERIVATIVE ERISA STANDING**

I.    **Statutory Standing under § 502(a) of ERISA**

Section 502(a) of ERISA provides statutory standing to "participants" and

"beneficiaries" of a welfare plan to bring enforcement actions against the plan or

its administrator. *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare

Reimb't Plan*, 388 F.3d 393, 400 (3d Cir. 2004). Section 502(a)(1) of ERISA

provides that a civil action may be brought,

> by a participant or beneficiary ... to recover benefits due to him under
> the terms of his plan, to enforce his rights under the terms of the plan,
> or to clarify his rights to future benefits under the terms of the plan....

29 U.S.C. § 1132(a)(1), (a)(3). The terms "participant" and "beneficiary" are

defined as follows:

> The term "participant" means any employee or former employee of an
> employer, or any member or former member of an employee
> organization, who is or may become eligible to receive a benefit of
> any type from an employee benefit plan which covers employees of
> such employer or members of such organization, or whose
> beneficiaries may be eligible to receive any such benefit.

> The term "beneficiary" means a person[5] *designated* by a participant,
> or by the terms of an employee benefit plan, who is or may become
> entitled to a benefit thereunder.

---

[5]    "Person" is defined by ERISA to include a "partnership," "corporation," or
"unincorporated organization." 29 U.S.C. § 1002 (9).

29 U.S.C. § 1002(7)-(8) (emphasis added).

In short, while ERISA provides that a "designated" entity may be a beneficiary and thus have direct standing,[6] the statutory scheme does not expressly address the standing of healthcare providers to bring a § 502(a) action.

## II.    Derivative Standing under ERISA

While ERISA does not expressly address the standing of healthcare providers, every circuit that has considered this issue, including this Court, has concluded that ERISA permits a provider to obtain derivative standing by way of an assignment. *CardioNet, Inc. v. Cigna Health Corp.*, --- F.3d ---, 2014 WL 1778149, at *9 n.10 (3d Cir. May 6, 2014)[7]; *Tango Trans. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 891 (5th Cir. 2003); *I.V. Servs. of Am., Inc. v. Trs. of Am. Consulting Eng'rs Council Ins. Trust Fund*, 136 F.3d 114, 117 n.2 (2d Cir.

---

[6]    *E.g., Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991) (holding healthcare provider was "beneficiary" with direct standing where patient "designated [the provider] as the person to receive her benefits" by contract); *see Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 307 n.5 (3d Cir. 2008) (distinguishing between a hospital having direct standing as a "beneficiary" and having derivative standing as an assignee).

[7]    In its petition for permission to appeal, NJBSC requested that this Court determine whether in the Third Circuit a healthcare provider may obtain derivative ERISA standing. (Pl. Pet. for Perm'n to Appeal, pp. 3, 17-18, *available at*, PACER/ECF under Third Circuit Case No. 14-8025, Doc. 3111574794). That question, however, has now been answered in the affirmative by *CardioNet*. Consequently, the fundamental question remaining in this appeal is what type of assignment is sufficient to confer derivative standing in the Third Circuit.

1998); *City of Hope Nat. Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223, 228 (1st Cir. 1998); *Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir. 1997); *Yarde v. Pan Am. Life Ins. Co.*, 67 F.3d 298, at \*5 (4th Cir. 1995); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kansas, Inc.*, 49 F.3d 1460, 1464 (10th Cir. 1995); *Lutheran Med. Ctr. of Omaha, NE v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan*, 25 F.3d 616, 619–20 (8th Cir. 1994), *abrogated in part on other grounds, Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966 (8th Cir. 2002); *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1277–78 (6th Cir. 1991), *cert. denied*, 505 U.S. 1233 (1992); *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700-01 (7th Cir. 1991); *Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374, 1378 (9th Cir. 1986).[8]

It is well-settled that Congress did not intend that ERISA disturb the practice of patients assigning their right to payment to healthcare providers so that the providers take the lead in obtaining and enforcing a patient's right to payment under a health plan. "ERISA is an intricate, comprehensive statute." *Boggs v. Boggs*, 520 U.S. 833, 841 (1997). "There is no language in [ERISA] which <u>even</u>

---

[8]      The Court of Appeals for the District of Columbia is the only circuit that has not yet addressed derivative ERISA standing, but relevant case law indicates that it would adopt the unanimous rule. *Sys. Council EM-3 v. AT&T Corp.*, 159 F.3d 1376, 1383 (D.C. Cir. 1998) (holding that ERISA healthcare plans are assignable in related context); *Psychiatric Inst., Inc. v. Conn. Gen. Life Ins. Co.*, 780 F. Supp. 24, 30 (D.D.C. 1992) (holding that a healthcare provider has derivative standing to sue as an assignee of an ERISA plan participant or beneficiary).

remotely suggests that [provider] assignments are proscribed or ought in any way to be limited." *Tango*, 322 F.3d at 891 (emphasis added) (quotation marks and citation omitted); *accord Lutheran Med. Ctr.*, 25 F.3d at 619. "ERISA elaborately distinguishes between pension benefit plans and welfare benefit plans." *Misic*, 789 F.2d at 1376. Consequently, "[t]he absence of any reference in the statute to assignment of the right to reimbursement for welfare benefits is in striking contrast to the complex and extensive provision prohibiting assignment of pension benefits, obviously the product of careful consideration" by Congress. *Id.*

Further, the circuit courts universally hold that derivative standing for healthcare providers is necessary to achieve ERISA's twin goals of protecting the healthcare benefits provided to patients and maintaining a uniform and simple process for doing so. 29 U.S.C. § 1001(b) ("policy of [ERISA] to protect ... the interests of participants ... and their beneficiaries ... by providing for appropriate remedies ... and ready access to the Federal courts"); *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 16 (2d Cir. 1993) ("There is a strong interest in uniform, uncomplicated administration of ERISA plans"); *see CardioNet*, --- F.3d ---, 2014 WL 1778149, at *11 (3d Cir. May 6, 2014) ("the assignment of ERISA claims to providers serves the interests of patients by increasing their access to care"). As the Ninth Circuit first explained,

> the general goal of [ERISA] would [not] be served by prohibiting ...
> assignment to the person who provided the beneficiary with the health

> care of the beneficiaries' right to reimbursement for the cost of that care. Health and welfare benefit [plans] are designed to finance health care. Assignment of [plan] monies to health care providers results in precisely the benefit the [plan] is designed to provide and [ERISA] is designed to protect. Such assignments also protect beneficiaries by making it unnecessary for health care providers to evaluate the solvency of patients before commencing medical treatment, and by eliminating the necessity for beneficiaries to pay potentially large medical bills and await compensation from the plan.

*Misic*, 789 F.2d at 1377.

In short, "ERISA does not forbid assignment by a beneficiary of his right to reimbursement under a health care plan to the health care provider[,]" *id.* at 1377, but "leav[es] the assignability of benefits to the free negotiations and agreement of the contracting parties[,]" *St. Francis Reg'l Med. Ctr.*, 49 F.3d at 1464 (10th Cir. 1995).

## III.    The District of New Jersey is Split on What Type of Assignment is Needed to Confer Derivative Standing

There is a sharp divide in the District of New Jersey over what type of assignment is sufficient for derivative standing. In this case, NJBSC obtained assignments of benefits from three patients who were entitled to healthcare benefits for the services rendered under ERISA plans administered by Aetna. (PA15; PA8). Each assignment is titled **INSURANCE AUTHORIZATION AND ASSIGNMENT** and provides in relevant part that:

> I hereby assign to [NJBSC] all payments for medical services rendered to myself or my dependents....

16

(PA20-23).

Under the historical rule in the District of New Jersey – which follows well-settled federal appellate precedents – there is "no distinction between an assignment of the right to payment and an assignment of plan benefits." *N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life*, No. 10–4260, 2011 WL 4737067, at *5–6 (D.N.J. June 30, 2011).[9] In the seminal decision of the district, Judge Ackerman held for the first time that a medical provider "has standing as an assignee to bring a claim against [a plan] under Section 502(a) of ERISA," and rejected the argument that an assignment must include anything more than the right to payment:

> [I]t is illogical to recognize that [a medical provider] as a valid assignee has a right to receive the benefit of direct reimbursement from its patients' insurers but cannot enforce this right.

---

[9]  *E.g., N. Jersey Brain & Spine Ctr. v. St. Peter's Univ. Hosp.*, No. 13–74, 2013 WL 5366400, at *3-5 (D.N.J. Sept. 25, 2013); *Edwards v. Horizon Blue Cross Blue Shield of N.J.*, No. 08–6160, 2012 U.S. Dist. LEXIS 105266 (D.N.J. June 4, 2012); *Premier Health Ctr., P.C. v. UnitedHealth Group*, No. 11–425, 2012 WL 1135608, at *6-7 (D.N.J. April 4, 2012); *N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*, No. 10–4260, 2011 WL 4737067, at *5 (D.N.J. June 30, 2011), *report adopted*, 2011 WL 4737063, at *2, *2 n.4 (D.N.J. Oct. 6, 2011); *Ambulatory Surgical Ctr. of N.J. v. Horizon Healthcare Servs.*, No. 07–2538, 2008 WL 8874292, at *3 (D.N.J. Feb. 21, 2008); *Gregory Surgical Servs., LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 06-0462, 2007 WL 4570323, at *3 n.1 (D.N.J. Dec. 27, 2007); *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.*, No. 06-928, 2007 WL 2416428, at *3 (D.N.J. Aug. 20, 2007).

*Wayne Surgical Ctr., LLC v. Concentra Preferred Sys.*, No. 06-928, 2007 WL 2416428, at *4 (D.N.J. Aug. 20, 2007) (citing *Tango*, 322 F.3d at 893-94 (5th Cir. 2003)).

Consequently, medical providers, like NJBSC, have obtained assignments in reliance on the rule that "[i]t is enough that the assignor assigned his or her right to reimbursement to the provider" "because the Court is concerned ... only with the right to reimbursement, attempted recoupments of overpayments, and [the plan]'s interference with the payment ... process." *Premier Health Ctr., P.C. v. UnitedHealth Group*, No. 11–425, 2012 WL 1135608, at *7 (D.N.J. April 4, 2012). More recently, in *North Jersey Brain & Spine Center v. Saint Peter's University Hospital*, No. 13–74, 2013 WL 5366400, at *3-4 (D.N.J. Sept. 25, 2013), Judge Salas examined NJBSC's assignment language that is <u>identical</u> to that at issue in this appeal and held that it was sufficient for NJBSC to have ERISA standing.

However, beginning with *Franco v. Connecticut General Life Insurance Co.*, 818 F. Supp. 2d 792 (D.N.J. 2011), some judges in the district departed from the historical rule and imposed a new and more stringent standard, requiring providers to produce an assignment at the pleading stage in which "the patient must relinquish and assign <u>all</u> plan rights and benefits, including the right to sue, to the plaintiff healthcare provider." *NJSR Surgical Ctr., L.L.C. v. Horizon Blue*

*Cross Blue Shield of N.J., Inc.*, 979 F. Supp. 2d 513, 523 (D.N.J. 2013) (emphasis added).[10]

In this case, the district court followed *Franco*'s interpretation of derivative standing and dismissing NJBSC's complaint for lack of standing, reasoning that:

> more than the right to payment is necessary to confer derivative standing under ERISA. Rather, the assignment must include the patient's legal claim to benefits under the plan. The Assignment Form here … is therefore insufficient.

(PA9). However, the district court erred in following *Franco* and its progeny because those cases are contrary to long-standing federal appellate precedents across the nation that hold an assignment of the right to payment is sufficient to confer standing under ERISA, and that low threshold for derivative standing is necessary to further the purposes of ERISA.

## IV. An Assignment of the Right to Payment is Sufficient to Confer Standing

Every court of appeals that has considered derivative standing based on an assignment of the right to payment alone has held that such an assignment is sufficient to confer standing. Most recently, in *Connecticut State Dental*

---

[10] *E.g., Demaria v. Horizon Healthcare Servs., Inc.*, No. 11–7298, 2012 WL 5472116 (D.N.J. Nov. 9, 2012) (Martini, J.); *MHA, LLC v. Aetna Health, Inc.* ("*MHA I*"), No. 12–2984, 2013 WL 544022 (D.N.J. Feb. 7, 2013) (Chesler, J.); *Middlesex Surgery Ctr. v. Horizon*, No. 13–112, 2013 WL 775536 (D.N.J. Feb. 28, 2013) (Chesler, J.); *MHA, LLC v. Aetna Health, Inc.* ("*MHA II*"), No. 12–2984, 2013 WL 705612 (D.N.J. Feb. 25, 2013) (Chesler, J.); *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, No. 13–05286, 2014 WL 895407 (D.N.J. March 06, 2014) (Martini, J.).

*Association v. Anthem Health Plans* the appellant argued that assignments were "ineffective to create standing because they convey <u>only the right to receive payment</u> of benefits and not the patient's right to file an action under § 502(a)." 591 F.3d 1337, 1352 (11th Cir. 2009) (emphasis added). The Eleventh Circuit rejected the reasoning of *Franco*, which was relied on by the district court in dismissing this case, and held "that assignment of the right to payment is enough to create standing." *Id.* The court of appeals explained that the policies embodied in ERISA and the practical realities of managed healthcare require a low threshold for the type of assignment necessary to confer standing:

> [A]n assignment furthers ERISA's purposes <u>only if</u> the provider can enforce the right to payment.
>
> "Of course, an assignment will not facilitate a plan participant's or beneficiary's receipt of benefits if the plan does not pay the benefits it owes, and provider-assignees are not permitted to sue on the participant's or beneficiary's behalf. If provider-assignees cannot sue the ERISA plan for payment, they will bill the participant or beneficiary directly for the insured medical bills, and the participant or beneficiary will be required to bring suit against the benefit plan when claims go unpaid. On the other hand, if provider-assignees can sue for payment of benefits, an assignment will transfer the burden of bringing suit from plan participants and beneficiaries to providers[, who] are better situated and financed to pursue an action for benefits owed for their services."

*Conn. State Dental Ass'n*, 591 F.3d at 1352-53 (emphasis added) (quoting *Cagle*, 112 F.3d at 1515 (11th Cir. 1997)).

Similarly, the Fifth Circuit has categorically rejected the notion that an assignment of the right to payment is insufficient. Like the assignment at issue in this case, in *Tango* the assignment provided the right to direct payment:

> I hereby assign payment of hospital benefits directly to Mississippi Baptist Medical Center herein specified and otherwise payable to me....

322 F.3d 888, 889 (5th Cir. 2003). When sued for underpayment, the plan argued that the provider had no standing "because the assignment language <u>only covers direct payment</u> of benefits to [the provider]...." *Id.* at 892 (emphasis added). The court of appeals held an assignment of the right to payment is sufficient for a provider "to seek recovery of payment for the benefits it provided." *Id.* (quotation marks and citation omitted).

Significantly, the Fifth Circuit holds that there are no "magic words" required for an assignment to confer standing, *see id.* ("authorization language represents nothing more than cautious and prudent 'belt and suspenders' drafting"), and even when a patient reserves some rights, it does not disturb a provider's standing to sue for underpayment as long as the patient assigned the right to payment, *Hermann Hosp. v. MEBA Med. & Benefits Plan*, 959 F.2d 569, 572-73 (5th Cir. 1992)[11] (reversing district court for erroneously concluding "that

---

[11]    *Overruled in part on other grounds, Access Mediquip, L.L.C. v. UnitedHealth Care Ins. Co.*, 698 F.3d 229 (5th Cir. 2012).

[patient's] reservation of the right to sue was fatal to the purported assignment of her benefits" to the provider).

The First Circuit also rejects the theory that derivative ERISA standing requires an assignment providing "an express right to sue for payment." In *I.V. Services*, the beneficiary's assignment,

> only authorized "direct payment to [the provider] ... for durable medical equipment, nutritional solutions and other intravenous medications, supplies and professional services provided by [the provider]".... No further rights were assigned. In fact, the assignment fail[ed] to provide [the provider] with an express right to sue for payment.

7 F. Supp. 2d 79, 83 (D. Mass. 1998) (emphasis added). On appeal, the plan "contend[ed] that the Benefits Assignment Form only assigned to [the provider] the right to receive payments, not [the beneficiary's] other rights, including the right to file suit." *I.V. Servs.*, 182 F.3d at 54 n.3 (1st Cir. 1999) (emphasis added). The court of appeals once again rejected managed healthcare's attempt to concoct a standing defense and avoid adjudication on the merits, holding that the provider's generic assignment form, which omitted the express right to sue, "easily clears th[e] low hurdle" for derivative standing. *Id.* (emphasis added).

The First Circuit explained that conditioning derivative standing on the scope of an assignment "wrongly conflates two distinct inquiries"; the scope of an assignment is relevant to what type of ERISA claims a provider may bring, but not whether the assignment satisfies the "low hurdle" for standing. *Id. Accord Tango,*

322 F.3d at 892 (5th Cir. 2003) (finding "scope" of an assignment was not relevant to standing but to whether provider may bring a "breach of fiduciary duty" claim, as opposed to an underpayment claim); *see Hermann Hosp.*, 959 F.2d at 573 (5th Cir. 1992) (holding that ERISA provides "separate and distinct" rights that may be assigned in part, and an assignment of the right to payment is sufficient for provider "to sue to recover payment"). This low threshold for derivative standing is necessary to effect Congress' intent that ERISA be construed "to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective ... recovery of benefits due to participants" of healthcare plans. S. Rep. No. 127, 93d Cong., 2d Sess., 3 (1974) (emphasis added), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4871.

In sum, every time a court of appeals has been faced with an assignment of the right to payment, the federal appellate bench has held that the provider has standing to sue to recover that payment. *E.g., Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 330, 332 (2d Cir. 2011) (the assignment of a patient's "right to reimbursement" by virtue of "'right to payment' forms" is sufficient for derivative standing); *Cagle*, 112 F.3d at 1512, 1515 (11th Cir. 1997) ("a plan beneficiary's assignment of the right to payment of ERISA benefits to a health care provider gives the health care provider standing"); *St. Francis Reg'l Med. Ctr.*, 49 F.3d at 1462, 1464 (10th Cir. 1995) (recognizing derivative standing where

23

"patients assign[ed] their health insurance benefits to the providers so that the providers can collect their payment directly"); *Lutheran Med. Ctr.*, 25 F.3d at 618-19 (8th Cir. 1994) (holding provider had standing where participant and beneficiary "assigned their benefit payments"); *Hermann Hosp.*, 959 F.2d at 573 (5th Cir. 1992) (holding derivative standing where "the document signed by [a beneficiary] upon her admission to the hospital was a valid assignment to [the provider] of [her] right to payment by [the plan] for benefits covered"); *Kennedy*, 924 F.2d at 700-01 (7th Cir. 1991) (an assignment providing "[t]he possibility of direct payment is enough" for standing); *Misic*, 789 F.2d at 1376 (9th Cir. 1986) (holding provider had standing where beneficiaries "assigned [provider] their rights of reimbursement"). (Emphasis added).[12]

In short, *Franco*'s interpretation of derivative standing sits alone. It has not been embraced by any circuit court in the country. This is because the *Franco* court overlooked the requirement that ERISA be interpreted in light of "federal common law" and in a manner that furthers "ERISA's purposes." *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 135 (3d Cir. 2012); *Burstein v.*

---

[12]    While three circuits (the Fourth, Sixth and Tenth Circuits) have not yet addressed what type of assignment is sufficient for standing, those circuits have affirmatively cited to decisions from other circuits that held an assignment of the right to payment without more is sufficient. *Yarde v. Pan Am. Life Ins. Co.*, 67 F.3d 298, at *5 (4th Cir. 1995) (following *Misic* and *Hermann*); *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) (following *Hermann*); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kansas, Inc.*, 49 F.3d 1460, 1464 (10th Cir. 1995) (following *Misic*).

*Retirement Acct. Plan For Emps. of Allegheny Health Educ. & Research Foundation*, 334 F.3d 365, 381 (3d Cir. 2003). In the context of derivative standing, ERISA's purpose is to protect and maximize the healthcare benefits of participants and beneficiaries by setting a low threshold for the type of assignment required for providers to treat and advocate on behalf of patients:

> [D]enying derivative standing to health care providers would harm participants or beneficiaries because it would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them up-front....

> [P]arties ... will only be willing to [accept] an assignment ... if they can be assured that they will be afforded standing to sue for reimbursement.... [R]ather than harming participants of ERISA-governed welfare plans, extending [derivate standing to medical providers] will almost surely benefit [patients].

*Tango*, 322 F.3d at 894 (quotation marks and citations omitted). *Accord CardioNet*, --- F.3d ---, 2014 WL 1778149, at *11 (3d Cir. 2014) ("the assignment of ERISA claims to providers serves the interests of patients by increasing their access to care").

In stark contrast, *Franco* and its progeny are grounded in New Jersey state contract law without proper consideration of ERISA's purposes or federal common law developed in the First, Fifth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits holding that an assignment of the right to payment is sufficient. *E.g.*, *Middlesex*, 2013 WL 775536, at *3 (relying on "New Jersey law," *Black's Law Dictionary* and *Williston on Contracts* to interpret ERISA); *MHA I*, 2013 WL

25

544022, at *8-9 (D.N.J. Feb. 7, 2013) (same); *MHA II*, 2013 WL 705612, at *7 (D.N.J. Feb. 25, 2013) (same). *Cf. Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 149 (2001) (holding ERISA must be interpreted uniformly and not vary state-by-state on the basis of each jurisdiction's law). Consequently, this Court should reverse the district court below.

## V.    The Right to Payment Incorporates Enforcement of that Right

It is fundamental that the assignment of the right to payment must necessarily include the ability to enforce that right. The district court erred because it ignored the axiomatic principle that for every right there must be a remedy at law:

> [I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit, or action at law, whenever that right is invaded.... [I]t is a settled and invariable principle in the law[] ... that every right, when withheld, must have a remedy, and every injury its proper redress.

*Bush v. Lucas*, 462 U.S. 367, 373 n.10 (1983) (quotation marks and citation omitted); *see Hobby v. U.S.*, 468 U.S. 339, 359 (1984) ("every right must be vindicated by an <u>effective</u> remedy") (emphasis added).

Applying this tenet in the context of ERISA assignments, courts have repeatedly held that an "assignment to receive payment of benefits <u>necessarily incorporates</u> the right to seek payment.... [T]he right to receive benefits would be hollow without such enforcement capabilities." *Conn. State Dental Ass'n*, 591

26

F.3d at 1352-53 (11th Cir. 2009) (emphasis added) (quotation marks and citation omitted). *Accord Hermann Hosp.*, 959 F.2d at 572-73 (5th Cir. 1992) (holding a provider with a direct payment assignment "as assignee received, among other rights, the right to sue to recover payment for covered benefits under the Plan"); *Premier Health Ctr., P.C. v. UnitedHealth Group*, 292 F.R.D. 204, 216 (D.N.J. 2013) (rejecting "argument that the standard form language assigning [right to payment] to [a provider] merely allows [the provider] to seek reimbursement from [a plan] for the care rendered to that patient, not the ability to pursue litigation on behalf of the patient"); *N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*, No. 10–4260, 2011 WL 4737067, at *6 (D.N.J. June 30, 2011) ("an assignment of a right to reimbursement logically includes the right to judicially enforce the reimbursement rights"), *report adopted*, 2011 WL 4737063 (D.N.J. Oct. 6, 2011); *Wayne Surgical Ctr.*, 2007 WL 2416428, at *4 (D.N.J. Aug. 20, 2007) (holding it would be "illogical to recognize that [a medical provider] as a valid assignee has a right to receive the benefit of direct reimbursement from its patients' insurers but cannot enforce this right"); *Productive MD, LLC v. Aetna Health, Inc.*, 969 F. Supp. 2d 901, 913 (M.D. Tenn. 2013) ("assignment to receive payment of benefits necessarily incorporates the right to seek payment") (quotation marks and citation omitted).

The law of assignments simply does not require a patient to specify every right or to include some "magic words" in order for the assignment to confer standing. "As a general matter, no particular form of language or terms of art are required to create a valid assignment." *Giacalone Healthcare, Inc. v. Highmark Blue Cross Blue Shield*, No. 3:11–2331, 2013 WL 5707455, at *3 (M.D. Pa. Oct. 18, 2013) (citing *Lerman v. Joyce Inter'l, Inc.*, 10 F.3d 106, 112 (3d Cir. 1993)). Consequently, the *Giacalone* court rejected *Franco*'s "restrictive view of what language is necessary to transform an assignment of the right to . . . payments . . . into the right to sue" as it is "unsupported by <u>any</u> appellate authority." *Id.* (emphasis added). *See also Davis v. Browning-Ferris, Inc.*, No. 97-8114, 1998 WL 964190, at *3 (E.D. Pa. Dec. 2, 1998) (citing *Lerman* and holding that an assignment of the right to receive payment necessarily includes the right to sue even if not expressly provided). In short, federal common law does not restrict the form of assignments. *E.g., Montefiore*, 642 F.3d at 329 n.8 (2d Cir. 2011) (holding a "valid assignment of claims is not necessarily limited to those instances in which the provider's documentation specifically reflects the assignment ... a 'checked box' [in a reimbursement form] or other written indication is merely one possible way of demonstrating that the claims were assigned").

Nor does derivative standing require that "the patient must relinquish and assign <u>all</u> plan rights and benefits, including the right to sue." *NJSR Surgical*, 979

F. Supp. 2d at 523 (D.N.J. 2013) (emphasis added).    As the Fifth Circuit recognized in *Hermann Hospital*, where the patient retained the "right to sue for denial of coverage" but assigned to the provider the "right to sue to recover payment for Plan benefits rendered," a patient may assign some but not all of "several distinct rights" under ERISA.  959 F.2d at 573 (5th Cir. 1992).  *Franco*'s focus on whether all of a patient's rights are encompassed within the assignment is not relevant to standing but simply to what types of claims a provider may bring.  *I.V. Services*, 182 F.3d at 54 n.3 (1st Cir. 1999); *see Tango*, 322 F.3d at 892 (5th Cir. 2003).  As long as the patient has assigned "the only plan benefit at issue (*i.e.*, the benefit of reimbursement)," a provider can clear the low threshold for standing.  *N. Jersey Brain & Spine Ctr.*, 2011 WL 4737067, at *6.  That is precisely what occurred in the case at bar.  The district court below should therefore be reversed.

## VI.  Derivative ERISA Standing is Not Forfeited by an Assignment That Reserves the Right to Bill the Patient

*Franco*'s interpretation of derivative standing is also unsound because it concludes that any assignment is ineffective if the provider reserves the right to "balance bill"[13] the patient.  *Franco*, 818 F. Supp. 2d at 804-05, 815, 811; *MHA I*, 2013 WL 544022, at *5, 7, 9.  Although the district court's decision in this case

---

[13]    *Franco* defines balance billing as "the practice by a medical provider of billing a patient for the difference between the provider's actual charge and the amount reimbursed under the patient's health insurance benefits plan." *Franco*, 818 F. Supp. 2d 792, 804 n.7.

was based solely on whether an assignment of the right to payment is sufficient, (PA8-9), we address the "balance billing" issue because it is an element of the *Franco* analysis.

Initially, *Franco* is inapposite to First Circuit, Fifth Circuit and other precedents finding standing where assignments reserved the right to bill the patient. *E.g.*, *Tango*, 322 F.3d at 889 (5th Cir. 2003) (holding a provider had standing where the assignment provided that the patient remains "financially responsible for charges not covered by the assignment"); *I.V. Servs.*, 182 F.3d 51 (1st Cir. 1999), *aff'g* 7 F. Supp. 2d at 84 (D. Mass. 1998) (holding a provider had standing where the assignment provided "that should my medical insurance program not make payment in full, for charges incurred, or if I am not covered by an insurance plan, that I will be responsible for any unpaid portions"); *Premier Health Ctr.*, 292 F.R.D. at 217 (holding a provider had standing where the assignment provided that the patient remained "financially responsible for all charges whether or not paid by insurance"); *cf. Montefiore*, 642 F.3d at 330 (2d Cir. 2011) (holding provider had derivative standing while observing "patients are likely to be held liable for the services they receive – indeed, ... a patient who receives medical care will be required to pay for it").

In fact, providers are usually required by law and/or healthcare industry practice to collect copayments, coinsurances and deductibles from patients

irrespective of the amount of benefits paid by the insurance plan. In addition, providers must protect their right to be paid for their services if it is subsequently determined that a patient was uninsured when the services were rendered. Thus, assignments must be drafted broad enough to address the varied and complex reimbursement issues that arise in today's managed healthcare environment. *See Tango*, 322 F.3d 888, 892 (5th Cir. 2003) (assignment language "represents nothing more than cautious and prudent 'belt and suspenders' drafting"). In short, a standardized provision preserving the provider's right to balance bill when necessary and permitted by law in no way vitiates the standing the assignment provides for amounts due under a particular plan.

The driving force behind *Franco*'s concern with balance billing is the potential for a "double recovery," that is, the risk that a provider collects the same dollar from the patient and the insurer. *Franco*, 818 F. Supp. 2d at 811; *MHA I*, 2013 WL 544022, at *4-5. Significantly, however, an assignment that retains a provider's <u>right to bill</u> a patient does not establish that a provider <u>in fact collected</u> from that patient. Stated differently, the legitimate concern over double recovery is a question of fact and so cannot be resolved on the face of the pleadings and without a complete record, notwithstanding *Franco*'s conclusion to the contrary.

In sum, precedent establishes an assignment is valid irrespective of whether it is contained in an agreement that also preserved a provider's right to bill the

patient. Furthermore, whether a provider may properly bill a patient and whether the provider actually collected money from that patient are patently questions of fact. Consequently, *Franco*'s analysis of derivative standing is unsound.

## CONCLUSION

The district court's order dismissing plaintiff-appellant North Jersey Brain &

Spine Center's complaint should be reversed.

Respectfully submitted,

**MAZIE SLATER KATZ & FREEMAN**
Counsel for Plaintiff-Appellant

BY:   /s/ *Eric D. Katz*
      ERIC D. KATZ

      N.J. Attorney No. 016791991
      103 Eisenhower Parkway
      Roseland, New Jersey 07068
      T: 973-228-9898
      F: 973-228-0303
      E: ekatz@mskf.net

DATED:  June 30, 2014

## COMBINED CERTIFICATIONS

## CERTIFICATION OF BAR MEMBERSHIP

I, ERIC D. KATZ, hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit. *See* 3d Cir. LAR 28.3(d), 46.1.

## CERTIFICATION OF WORD COUNT

I, ERIC D. KATZ, hereby certify that the within brief complies with the typeface requirements and type-volume limitation of Fed. R. App. P. 32(a)(5) and (7). Reliance is placed upon the "word count" function of Microsoft Word, the word-processing system used to prepare this brief. This brief uses proportionately spaced 14-point font in Times New Roman style and contains 7,473 words, excluding the parts of the brief exempted by court rule.

## CERTIFICATION OF IDENTICAL COMPLIANCE OF BRIEFS

I, ERIC D. KATZ, hereby certify that the text of the e-brief (electronically filed brief) and the hard copies of the brief are identical.

## CERTIFICATION OF VIRUS CHECK

I, ERIC D. KATZ, hereby certify that a virus check has been performed on the Adobe® PDF file containing the within brief using Sunbelt Vipre Enterprise, Standard Edition software and no virus was detected.

## CERTIFICATION OF SERVICE

I, ERIC D. KATZ, hereby certify that on this date, I caused an Adobe® PDF file containing the foregoing Brief and Appendix on behalf of Plaintiff-Appellant to be filed with the Clerk of the Court using CM/ECF and, as such, was served electronically upon counsel of record for Appellee.

I further certify that on this date, I caused an original and eight (8) Hard Copies of the foregoing Brief and Appendix on behalf of Plaintiff-Appellant to be served by overnight mail upon:

> Marcia M. Waldron, Clerk
> United States Court of Appeals for the Third Circuit
> 21400 U.S. Courthouse
> 601 Market St.
> Philadelphia, PA 19106-1790,

together with one (1) hard copy via hand delivery to:

> Thomas Vecchio, Esq. and Christine Orlando, Esq.
> Connell Foley, LLP
> 457 Haddonfield Road, Suite 230
> Cherry Hill, New Jersey 08002.

> /s/ Eric D. Katz
> ERIC D. KATZ

Dated:  June 30, 2014

## INDEX OF PLAINTIFF'S APPENDIX

### VOLUME I

History of CM/ECF Docket Entries from the U.S. District Court
for the District of New Jersey, Case No. 2:13-05286 ............................................PA1-2

Order of the U.S. Court of Appeals for the Third Circuit Granting Leave
to Appeal (which is the Notice of Appeal[1]) ...................................................... PA3

Order of the U.S. District Court Certifying this Appeal
pursuant to § 1292(b) and Fed. R. App. P. 5(a)(3) ............................................PA4-6

Order of the U.S. District Court Dismissing Plaintiff NJBSC's
Complaint pursuant to Fed. R. Civ. P. 12(b)(6) ...................................................... PA7

Opinion of the U.S. District Court in Support of the Court's
Order of Dismissal of *NJBSC v. Aetna*, Case No. 2:13-05286............................PA8-10

### VOLUME II

Defendant Aetna's Notice of Motion to Dismiss ................................................PA11-12

Plaintiff  NJBSC's Complaint and Ex. A of the Complaint ................................PA13-23

---

[1]    *See* Fed. R. App. P. 5(d)(2)

**2:13-cv-05286-WJM-MF** NORTH JERSEY BRAIN & SPINE CENTER v. AETNA, INC.
William J. Martini, presiding
Mark Falk, referral
**Date filed:** 09/04/2013
**Date terminated:** 03/06/2014
**Date of last filing:** 05/02/2014

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| 1 | *Filed:* *Entered:* | 09/04/2013 09/05/2013 | Notice of Removal |
| 2 | *Filed & Entered:* | 09/06/2013 | Order |
| 3 | *Filed & Entered:* | 09/10/2013 | Notice of Appearance |
| 4 | *Filed & Entered:* | 09/10/2013 | Application for Clerk's Order to Ext Answer/Proposed Order |
| | *Filed & Entered:* | 09/12/2013 | Update Answer Due Deadline |
| | *Filed & Entered:* | 09/25/2013 | Set/Reset Motion and R&R Deadlines/Hearings |
| 5 | *Filed & Entered:* *Terminated:* | 09/25/2013 03/06/2014 | Motion to Dismiss |
| 6 | *Filed & Entered:* | 09/26/2013 | Order |
| 7 | *Filed & Entered:* | 10/07/2013 | Brief in Opposition to Motion |
| 8 | *Filed & Entered:* | 10/15/2013 | Letter |
| | *Filed & Entered:* | 10/17/2013 | Set/Reset Motion and R&R Deadlines/Hearings |
| 9 | *Filed & Entered:* | 10/18/2013 | Reply Brief to Opposition to Motion |
| 10 | *Filed & Entered:* | 03/06/2014 | Opinion |
| 11 | *Filed & Entered:* | 03/06/2014 | Order on Motion to Dismiss |
| 12 | *Filed & Entered:* | 03/13/2014 | Letter |
| 13 | *Filed & Entered:* | 03/19/2014 | Order |
| 14 | *Filed & Entered:* | 04/28/2014 | Order on Petition for Leave to Appeal |
| 15 | *Filed:* *Entered:* | 04/28/2014 05/02/2014 | Notice of Interlocutory Appeal |
| 16 | *Filed & Entered:* | 05/02/2014 | USCA Case Number |

| PACER Service Center |
|---|
| **Transaction Receipt** |
| 06/27/2014 16:20:28 |

CM/ECF LIVE - U.S. District Court for the District of New Jersey-Hi...    https://ecf.njd.uscourts.gov/cgi-bin/HistDocQry.pl?72059541037800...

| PACER Login: | ms4928 | Client Code: | Aetna Appeal |
|---|---|---|---|
| Description: | History/Documents | Search Criteria: | 2:13-cv-05286-WJM-MF |
| Billable Pages: | 1 | Cost: | 0.10 |

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**
April 11, 2014
**BCO-069**

No. <u>14-8025</u>

NORTH JERSEY BRAIN & SPINE CENTER,
Petitioner

v.

AETNA, INC.

(D.N.J. No. 13-cv-05286)

Present:     AMBRO, CHAGARES and VANASKIE, <u>Circuit Judges</u>

1.   Petition for Permission to Appeal Under 28 U.S.C. Section 1292(b) by
     Petitioner North Jersey Brain & Spine Center.

2.   Response by Respondent Aetna Inc to for Permission to Appeal Under 28
     U.S.C. Section 1292(b).

Respectfully,

Clerk/tyw

_____ **O R D E R** _____
The foregoing petition requesting permission to appeal is granted.

By the Court,

<u>s/ Thomas L. Ambro</u>
Circuit Judge

Dated:     April 28, 2014
tyw/cc:    Eric D. Katz, Esq.
           Thomas Vecchio, Esq.

A True Copy:

Marcia M. Waldron, Clerk

**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 228-9898
Attorneys for Plaintiff

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER | : Civil Action No. 2:13-cv-05286-WJM-MF |
| Plaintiff, | : |
| vs. | : |
| | : **ORDER PURSUANT TO** |
| AETNA, INC., | : **28 U.S.C. §1292(b), FED. R. APP. P.** |
| | : **5(a)(3) AND TO STAY DISTRICT** |
| | : **COURT ACTION PENDING** |
| Defendant. | : **OUTCOME OF APPEAL TO THE** |
| | : **THIRD CIRCUIT** |

THIS MATTER having been opened to the Court by counsel for plaintiff, North Jersey Brain & Spine Center ("NJBSC"), for an Order pursuant to 28 U.S.C. §1292(b) and Fed. R. App. P. 5(a)(3), and to stay this District Court action pending the outcome of NJBSC's appeal to the Third Circuit Court of Appeals; and the Court having considered this matter and the arguments of all parties; and for good cause shown; the Court makes the following findings:

WHEREAS, this Court in an opinion and accompanying order filed on March 6, 2014 (D.E. 10 and D.E. 11) (collectively the "Court's Order") granted without prejudice the Fed. R. Civ. P. 12(b)(6) motion to dismiss filed by defendant Aetna, Inc. ("Aetna"), finding that NJBSC, a non-participating neurosurgical medical practice, did not have derivative standing to pursue claims against Aetna under the Employee Retirement Income Security Act of 1974, § 502(a)(1)(B), (g)(1), 29 U.S.C. § 1132(a)(1)(B), (g)(1)

(collectively "ERISA"), because NJBSC was not provided an adequate assignment of benefits from its patient, a beneficiary under Aetna's plan;

WHEREAS, this Court recognizes that although the Third Circuit has not directly addressed the issue, numerous courts in this District have held that a healthcare provider, such as NJBSC, has derivative standing to sue under ERISA when a beneficiary has assigned his or her rights under a plan to the provider;

WHEREAS, this district is split, however, on what type of assignment of benefits is necessary to confer such derivative standing;

WHEREAS, some District Judges, including this Court, have concluded that more than the right to receive payment is needed to constitute an appropriate assignment of benefits while other District Judges have held that the right to payment constitutes an appropriate assignment of benefits, including Judges that have previously considered the exact language in the NJBSC assignment of benefits that is at issue in the case at bar;

WHEREAS, this Court dismissed NJBSC's Complaint without prejudice, and granted NJBSC leave to file an Amended Complaint consistent with the Court's Order within thirty (30) days of the date of the Court's Order, but the question of what constitutes an appropriate assignment of benefits to confer ERISA derivative standing is a "controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the [Court's Order] may materially advance the ultimate termination of the litigation" pursuant to 28 U.S.C. § 1292(b); it is hereby

ORDERED as follows;

1.    NJBSC may petition the Third Circuit and appeal the Court's Order in accordance with 28 U.S.C. § 1292(b).

2.    The Court's Order shall be amended and deemed filed as of the date that the within Order is filed for purposes of <u>Fed. R. App. P.</u> 5(a)(3).

3.    All District Court proceedings in this matter are hereby immediately stayed pending the outcome of the Third Circuit appeal.

WILLIAM J. MARTINI, U.S.D.J.

3/19/14

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NORTH JERSEY BRAIN AND SPINE CENTER, | Civ. No. 2:13-05286 (WJM) |
| Plaintiff, | ORDER |
| v. | |
| AETNA, INC., | |
| Defendant. | |

**THIS MATTER** comes before the Court on Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6); for the reasons set forth in the accompanying Opinion; and for good cause appearing;

**IT IS** on this 6th day of March 2014, hereby,

**ORDERED** that the motion to dismiss is **GRANTED**; and it is further

**ORDERED** that the Complaint is **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Plaintiff shall have until April 8, 2014 to amend the Complaint in accordance with the accompanying Opinion.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NORTH JERSEY BRAIN AND SPINE CENTER,** | Civ. No. 2:13-05286 (WJM) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **AETNA, INC.,** | |
| **Defendant.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff North Jersey Brain and Spine Center ("NJBSC") brings this action under the Employee Retirement Securities Act of 1982 ("ERISA") against Defendant Aetna Life Insurance Company (improperly pled as Aetna, Inc.) ("Aetna"). NJBSC seeks reimbursement for medical services that it provided for three of Aetna's subscribers. This matter comes before the Court on Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED.**

NJBSC is a medical practice specializing in neurosurgical procedures and treatment of the brain and spinal cord in New Jersey. (Compl., The Parties, ¶ 1.) Surgeons at NJBSC performed surgical procedures on three patients with Aetna healthcare insurance plans. (Compl., Substantive Allegations, ¶¶ 1-2.) In connection with these procedures, each patient signed an "Insurance Authorization and Assignment" form (the "Assignment Form"). (Compl. Ex. A.) The Assignment Form authorizes NJSBC to "appeal to [the patient's] insurance company on [the patient's] behalf" and "assigns to [NJSBC] all payments for medical services rendered." (Compl. Ex. A.) NJBSC alleges that Aetna authorized the three patients' procedures but then refused to pay the related claims in violation of ERISA. (Compl., Substantive Allegations, ¶¶ 2-3.) NJBSC thus seeks reimbursement for the procedures (Count One) and an award of attorney's fees (Count Two) from Aetna under ERISA. *See* 29 U.S.C. §§ 1132(a)(1)(B), 1132(g)(1). Aetna moves to dismiss, arguing that NJBSC has not demonstrated that it has standing to assert claims against Aetna for the alleged ERISA violations.

Standing to sue under ERISA Section 502(a), the statute's civil enforcement mechanism, is generally limited to participants or beneficiaries of ERISA plans. 29 U.S.C. § 1132(a); *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399-400 (3d Cir. 2004). NJBSC, which is not a participant or beneficiary, argues that it may sue as an assignee. In short, NJBSC argues that the assignments it received from its patients, who are participants/beneficiaries of ERISA-covered Aetna benefits plans, allow it to "stand in the shoes" of those patients in this Court.

Although the Third Circuit has not directly addressed the issue, numerous courts in this district have held that a health care provider has standing to sue under ERISA where a beneficiary or participant has assigned her right to benefits under a plan to the provider. *See Pasack Valley Hosp., Inc.*, 388 F.3d at 400 n.7 (nothing that almost every other circuit has recognized standing where the beneficiary or participant has assigned his rights to benefits to the provider); *see, e.g., Franco v. Connecticut Gen. Life Ins. Co.*, 818 F. Supp. 2d 792, 807 (D.N.J. 2011) (finding that a health care provider has standing to sue if it receives an assignment of benefits). This district is split, however, on what type of assignment is necessary to confer derivative standing. Some judges, including myself, have found that more than the mere right to receive payment is needed. *See, e.g., MHA, LLC v. Aetna Health, Inc.*, No. 12-2984, 2013 WL 705612, at *3 (D.N.J. Feb. 25, 2013) (stating that any purported assignment must "encompass the patient's legal claim to benefits under the plan"); *Demaria v. Horizon Healthcare Servs., Inc.*, Civ. No. 11–7298, 2012 WL 5472116, at *4 (D.N.J. Nov. 9, 2012) (noting that the scope of the assignment is critical to determining standing). Other judges, including judges considering the exact language at issue in this case, have found that the right to recover payment is enough. *See N. Jersey Brain & Spine Ctr. v. Saint Peter's Univ. Hosp.*, No. 13-74, 2013 WL 5366400 (D.N.J. Sept. 25, 2013) (finding that an assignment containing the same language as the assignment at issue here was adequate); *Edwards v. Horizon Blue Cross Blue Shield of New Jersey*, No. 08-6160, 2012 U.S. Dist. LEXIS 105266 (D.N.J. June 4, 2012) ("Accordingly, the assignment of the right to reimbursement here confers derivative standing under ERISA.").

This Court remains persuaded that more than the right to payment is necessary to confer derivative standing under ERISA. Rather, the assignment must include the patient's legal claim to benefits under the plan. The Assignment Form here, which includes only the right to payment and the right to appeal to Aetna on the patient's behalf, is therefore insufficient.[1] Accordingly, Aetna's motion to dismiss is **GRANTED**.

---

[1] Aetna also argues that NJBSC failed to exhaust its administrative remedies under ERISA. As the Court finds that NJBSC has not demonstrated that it has standing under ERISA, it need not reach this issue. However, the Court notes that the Complaint contains facts alleging that NJBSC "appealed to Aetna" and that Aetna "has provided only incomplete or evasive responses to [NJSBC] and/or has refused to pay any fees." Compl. ¶ 4. These allegations would likely be enough to survive a motion to dismiss under Rule 12(b)(6). To the extent that Aetna argues that NJSBC failed to follow the two-step appeal procedure under the applicable plans, the Court notes that "[a]n argument that relies on proof of facts outside the Complaint cannot succeed on a motion to dismiss." *Rehab. Inst. of*

Counts One and Two are **DISMISSED WITHOUT PREJUDICE.**  The Court shall
grant NJBSC thirty days to file an Amended Complaint consistent with this Opinion.  An
appropriate order follows.


                                        _____/s/ William J. Martini_____
                                        **WILLIAM J. MARTINI, U.S.D.J.**


**Date: March 6, 2014**

---

*N. Jersey, Inc. v. Home Depot Inc.*, No. 12-4035, 2012 WL 5944658, at *2 (D.N.J. Nov. 27, 2012)