No. 14-2101

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NORTH JERSEY BRAIN & SPINE CENTER,

Plaintiff – Appellant,

v.

AETNA, INC.,

Defendant – Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

BRIEF FOR AMERICA'S HEALTH INSURANCE PLANS AS
*AMICUS CURIAE* SUPPORTING AFFIRMANCE

Michael P. Abate
Dinsmore & Shohl LLP
801 Pennsylvania Ave., N.W.
Suite 610
Washington, DC 20004
(202) 372-9125

**FED. R. APP. P. 26.1 CORPORATE DISCLOSURE STATEMENT**

America's Health Insurance Plans ("AHIP") is the national trade association representing the health insurance industry.  AHIP has no parent company and no publicly held company has a 10% or greater ownership interest in AHIP.

## REQUIRED CERTIFICATION OF BAR MEMBERSHIP

Pursuant to 3d Cir. L.A.R. 28(d), I hereby certify that I am a member in good standing of the bar of the Third Circuit.


_s/ Michael P. Abate_____
Michael P. Abate

# TABLE OF CONTENTS

FED. R. APP. P. 26.1 CORPORATE DISCLOSURE STATEMENT...............i

REQUIRED CERTIFICATION OF BAR MEMBERSHIP............................ii

TABLE OF CONTENTS.................................................................iii

TABLE OF AUTHORITIES............................................................. iv

INTEREST OF *AMICUS CURIAE* ................................................... 1

AUTHORITY TO FILE *AMICUS CURIAE* BRIEF ........................................ 2

SUMMARY OF ARGUMENT.......................................................... 2

ARGUMENT............................................................................ 4

I.    A Provider Pursuing a Derivative Claim for Benefits Stands in the Shoes of an ERISA Beneficiary. .............................................. 4

II.   Providers Bringing Derivative ERISA Claims Must Abide By the Same Claims Rules as The Patients Whose Benefits They Seek. ........................................................... 6

   A.   ERISA Participants and Beneficiaries Must Comply With Reasonable Claims Procedures Established by Their Plans. .............................................................. 6

   B.   These Reasonable Claims Procedures are Good for ERISA Participants and Beneficiaries, Plans, and Courts............................................................... 10

   C.   Courts Enforce These Reasonable Claims Procedures In Suits Brought Directly by Participants and Beneficiaries as Well as in Derivative Suits Brought by Providers........................................... 13

CONCLUSION....................................................................... 16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) ....................................................... 1, 4

*Amato v. Bernard*, 618 F.2d 559 (9th Cir. 1980) ................................................. 11, 12

*CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165 (3d Cir. 2014) ...................... 4, 5

*Casatelli v. Horizon Blue Cross Blue Shield*, 2010 U.S. Dist. LEXIS 95928 (D.N.J. Sept. 13, 2010) ...................................................................................... 15

*City of Hope Nat'l Med. Ctr. v. Seguros de Servicios de Salud*, 983 F. Supp. 68 (D.P.R. 1997) .................................................................................................. 13

*Das v. UNUM Life Ins. Co. of Am.*, 222 Fed. Appx. 126 (3d Cir. 2007) .............. 12

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27 (1983) ......................................................................................... 5

*Harrow v. Prudential Ins. Co.*, 279 F.3d 244 (3d Cir. 2002) ........................... 3, 11, 12

*Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604 (2013) ........ 10, 12, 14

*I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 182 F.3d 51 (1st Cir. 1999) .................................................................................................................. 14

*Jin Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677 (7th Cir. 2002) .......... 12, 14

*Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990) .................................................................................................................. 5

*Menendez v. UFCW Local 888 Health Fund*, 2005 U.S. Dist. LEXIS 17034 (D.N.J. Aug. 11, 2005) .............................................................................. 15

*Metro. Life Ins. Co. v. Price*, 501 F.3d 271 (3d Cir. 2007) ...................................... 12

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) ....................................... 1

*Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004) .................................................................. 5

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) ..................................................... 4

*Pryzbowski v. U.S. Healthcare*, Inc., 245 F.3d 266 (3d Cir. 2001) ........................... 4

*Spinal Imaging, Inc. v. Aetna Health Mgmt. LLC*, 2014 U.S. Dist. LEXIS 40099 (D. Mass. Mar. 26, 2014) ....................................................... 13

*Variety Children's Hosp. v. Century Medical Health Plan*, 57 F.3d 1040, 1042 (11th Cir. 1995) ................................................................ 14, 15

*Zaslow v. Miles*, 1998 U.S. Dist. LEXIS 19187 (E.D. Pa. Dec. 9, 1998) .............. 14

**Statutes**

29 U.S.C. § 1001 *et seq.* ..................................................................... 1

29 U.S.C. § 1132(a)(1) ....................................................................... 4

29 U.S.C. § 1133 .............................................................................. 6

29 U.S.C. § 1135 .............................................................................. 6

**Rules**

Fed. R. App. P. 29(c)(5) ...................................................................... 1

**Regulations**

29 C.F.R. § 2560.503-1 ....................................................................... 6

29 C.F.R. § 2560.503-1(b)(1) ................................................................ 6

29 C.F.R. § 2560.503-1(b)(2) ............................................................. 6, 7

29 C.F.R. § 2560.503-1(b)(4) ................................................................ 6

29 C.F.R. § 2560.503-1(b)(5) ................................................................ 6

29 C.F.R. § 2560.503-1(c)(1)(i) ............................................................. 8

29 C.F.R. § 2560.503-1(c)(2) ................................................................ 8

29 C.F.R. § 2560.503-1(c)(3) ................................................................ 9

29 C.F.R. § 2560.503-1(e) .................................................................... 7

29 C.F.R. § 2560.503-1(f)(iii) ............................................................... 8

29 C.F.R. § 2560.503-1(h) ................................................................... 7, 8, 11

29 C.F.R. § 2560.503-1(h)(2)(ii) ............................................................. 11

29 C.F.R. § 2590.715-2719(c) ................................................................ 7, 9

29 C.F.R. § 2590.715-2719(d) ............................................................... 7, 9

# INTEREST OF *AMICUS CURIAE*[1]

America's Health Insurance Plans ("AHIP") is the national trade association representing companies that administer or provide health insurance coverage to more than 200 million Americans. The association's goal is to provide a unified voice for the health care financing industry, to expand access to high quality, cost-effective health care to all Americans, and to ensure Americans' financial security through robust insurance markets, product flexibility and innovation, and an abundance of consumer choice.

The majority of individuals with health coverage insured or administered by AHIP members are participants in, or beneficiaries of, employee benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Thus, AHIP and its members have an interest in ensuring that courts correctly interpret and apply ERISA. In furtherance of that interest, AHIP (or its predecessor organizations) participated as *amicus* in numerous cases asking courts to clarify important ERISA principles. *See, e.g., Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) (AHIP participated as *amicus* in ERISA litigation); *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) (same for AHIP's predecessor organizations).

---

[1] Pursuant to Fed. R. App. P. 29(c)(5), *amicus* certifies that: (1) no party's counsel authored the brief in whole or in part; (2) no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and (3) no person other than *amicus*, its members, or its counsel contributed money that was intended to fund preparing or submitting the brief.

## AUTHORITY TO FILE *AMICUS CURIAE* BRIEF

All parties have consented to the filing of this brief.  Therefore, a motion for leave to file this brief is not required under Fed. R. App. P. 29(a).

## SUMMARY OF ARGUMENT

ERISA participants and beneficiaries—or providers with valid assignments standing in their shoes—must comply with certain claims requirements set forth in regulations promulgated by the Secretary of Labor, and in the documents governing their specific plans.  Compliance with these claims requirements is a prerequisite to any suit for benefits under § 502(a)(1)(B) of ERISA.  Thus, if this Court reverses the district court's judgment, it should be careful not to disturb existing case law by suggesting that any provider may invoke ERISA's civil remedies merely because it possesses a valid assignment from a patient.[2]

A valid assignment is a necessary, but not sufficient, condition to bringing a derivative ERISA benefits suit.  Congress enacted a carefully integrated civil enforcement scheme that channels all disputes about plan benefits into litigation under § 502(a) of ERISA.  But in order to sue under that provision, participants and beneficiaries (or providers with valid assignments) must first comply with the reasonable claims requirements established by the Secretary or their specific plan

---

[2] Aetna's brief persuasively covers the arguments for why the specific assignment language at issue in this case is not sufficient to confer derivative standing upon the appellants; those arguments will not be repeated in this brief.

documents.  For example, participants and beneficiaries must comply with any

preauthorization requirements that the plans impose, as they often do when patients

seek out-of-network care.  Similarly, participants and beneficiaries must exhaust all

levels of administrative review required by plan documents before initiating litigation.

In addition, participants and beneficiaries must ensure that any such litigation is

initiated within the limitations periods set forth in the relevant plan documents.

Requiring compliance with these reasonable claims procedures makes perfect

sense.  As this Court has held, compliance with claims procedures is good for

participants and beneficiaries, plans, and the courts that review adverse benefit

determinations.  Among other things, exhaustion helps to "reduce the number of

frivolous lawsuits under ERISA; to promote the consistent treatment of claims for

benefits; to provide a non-adversarial method of claims settlement; and to minimize

the costs of claims settlement for all concerned." *Harrow v. Prudential Ins. Co.*, 279 F.3d

244, 249 (3d Cir. 2002) (quotation marks and citations omitted).  And because these

benefits accrue regardless of the identity of the plaintiff, courts have consistently

required compliance with reasonable claims procedures even where claims are

brought by providers pursuing derivative actions, like this case.

If this Court determines that NJBSC has an assignment sufficient to grant

standing under Section 502(a)(1)(B), it should be careful not to suggest that NJBSC

may proceed with its lawsuit.  Rather, as in all cases under § 502(a), the district court

must assess in the first instance whether the plaintiff complied with the prerequisites

for bringing an ERISA benefits claim, including the requirement that it exhaust all required administrative appeals.

## ARGUMENT

## I.    A Provider Pursuing a Derivative Claim for Benefits Stands in the Shoes of an ERISA Beneficiary.

Section 502(a) of ERISA, 29 U.S.C. § 1132(a), contains a set of "carefully integrated civil enforcement provisions." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). Among those provisions is § 502(a)(1), which permits "a participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1).

This provision is the sole mechanism for seeking benefits due under an ERISA plan. Thus, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). As this Court recently put it, "suits against insurance companies for denial of benefits are preempted by ERISA, 'even when the claim is couched in terms of common law negligence and breach of contract.'" *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 177 (3d Cir. 2014) (quoting *Pryzbowski v. U.S. Healthcare*, Inc., 245 F.3d 266, 278 (3d Cir. 2001)).

Providers, of course, cannot sue directly under § 502(a)(1). "By its terms, standing under the statute is limited to participants and beneficiaries." *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27 (1983)). A provider "is neither a participant nor a beneficiary," and therefore "does not have standing under ERISA to sue in its own right." *Pascack Valley*, 388 F.3d at 400.

The only way for a provider to sue a plan to contest a benefit denial, then, is to bring a "derivative" suit asserting the participant's or beneficiary's interests. As this Court explained in *CardioNet*, "[p]roviders lack the ability to bring a claim on their own behalf against [a plan] for failing to provide adequate coverage to the Participants: any such claim would be preempted by ERISA, and therefore would belong, *unless and until assigned*, to the participants and beneficiaries of the ERISA plan." *CardioNet*, 751 F.3d at 177 (emphasis added). That kind of suit requires an assignment sufficient to confer standing on the provider.

*Amicus* agrees with Aetna that the specific language of the assignment at issue in this case was not sufficient to confer standing on NJBSC. But even if it were, that is not the end of the relevant legal analysis. Because "[p]roviders bring these claims standing in the shoes of the Participants," *CardioNet*, 751 F.3d. at 170, they obtain through assignment "only whatever rights [the beneficiary] enjoyed under the terms of the plan." *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 250 (5th Cir.

- 5 -

1990).  As explained below, the rights of plan participants and beneficiaries are

conditioned upon compliance with ERISA's Claims Rule and any reasonable claims

procedures established by the plan.  Thus, if providers intend to bring derivative suits

standing in the shoes of their patients, they must ensure that they have followed all of

the required procedures for perfecting their claims.

## II.    Providers Bringing Derivative ERISA Claims Must Abide By the Same Claims Rules as The Patients Whose Benefits They Seek.

### A.    ERISA Participants and Beneficiaries Must Comply With Reasonable Claims Procedures Established by Their Plans.

Congress delegated to the Secretary of Labor the authority to establish

regulations setting out procedures for adjudicating ERISA claims.  *See* 29 U.S.C.

§§ 1133, 1135.  The Secretary, in turn, has promulgated the ERISA Benefit Claims

Procedure Regulation ("ERISA Claims Rule" or "Claims Rule"), which appears at 29

C.F.R. § 2560.503-1.

That Claims Rule places numerous obligations on plans adjudicating claims for

benefits.  For example, ERISA plans must: establish and maintain reasonable claims

procedures (29 C.F.R. § 2560.503-1(b)(1)); describe those procedures in the summary

plan description (*id.* § 2560.503-1(b)(2)); permit an authorized representative to pursue

claims on a beneficiary's behalf (*id.* § 2560.503-1(b)(4)); establish "processes and

safeguards" to ensure that "benefit claim determinations are made in accordance with

governing plan documents" and that "the plan provisions have been applied

consistently with respect to similarly situated claimants" (*id.* § 2560.503-1(b)(5)); and

establish and maintain an appeal procedure (*id.* § 2560.503-1(h)).  In addition, after the Secretary's promulgation of new rules required by the Affordable Care Act, non-grandfathered group health plans and health insurance issuers must provide the participant or beneficiary with an opportunity for an external appeal to an Independent Review Organization (IRO) if the final adverse benefit determination was based upon the issuer's or plan's requirements for medical necessity, appropriateness, health care setting, level of care, or effectiveness of a covered benefit.  *See* 29 C.F.R. § 2590.715-2719(c)-(d).

At the same time, the Secretary's regulations place obligations on participants and beneficiaries wishing to take advantage of the rights created by ERISA and the Claims Rule.  These requirements are generally spelled out in individual plan documents and the Secretary's regulations make clear that an ERISA participant or beneficiary has the obligation to follow a plan's particular rules.  Indeed, the Claims Rule defines the term "claim for benefits" to mean "a request for a plan benefit or benefits made by a claimant *in accordance with a plan's reasonable procedure for filing benefits claims*."  29 C.F.R. § 2560.503-1(e) (emphasis added).

As the ERISA Claims Rule expressly acknowledges, ERISA plans may require participants and beneficiaries to obtain approval of certain benefits in advance of obtaining medical care.  *See, e.g.*, *id.* § 2560.503-1(b)(2) (requiring benefit plans to include a description of all claims procedures, including "any procedures for obtaining prior approval as a prerequisite for obtaining a benefit" in the summary plan

- 7 -

description); *id.* § 2560.503-1(c)(1)(i) (requiring group health plans, in the case of a claimant's failure to "follow the plan's procedures for filing a pre-service claim," to notify the beneficiary of the failure and the proper procedures to be followed when filing such a claim); *id.* § 2560.503-1(f)(iii) (requiring group health plans to notify claimants of the plan's benefit determination for pre-service claims "within a reasonable period of time appropriate to the medical circumstances, but later than 15 days after receipt of the claim by the plan"). At least one of the plans at issue in this case included this very kind of pre-service claim approval requirement. *See* DE 5-4, PageID: 54 ("[C]ertain services and supplies do require Pre-Approval from Aetna Health Inc., as outlined in the Contract and Evidence of Coverage.").[3]

Likewise, the Claims Rule recognizes that plans may require participants and beneficiaries to exhaust their administrative remedies before filing suit under ERISA. The Rule requires plans to create procedures for the internal appeal of adverse claim determinations. *See* 29 C.F.R. § 2560.503-1(h). Group health plans may require a participant or beneficiary to exhaust up to two mandatory internal appeals prior to filing suit under § 502(a). *See, e.g., id.* § 2560.503-1(c)(2). The plan also may create additional, voluntary levels of external appeal, such as appeals to an external review

---

[3] Citations to "DE" refer to the relevant docket entries in Case No. 2:13-cv-05286-WJM-MF (D.N.J.). In the District Court, Aetna attached to its motion to dismiss only the portions of the plans that were relevant to that motion. *Amicus* could not determine from the plan excerpts attached as Exhibits B and C (DE 5-5 and 5-6) whether those plans similarly require pre-approval to obtain certain benefits.

agency. *Id.* § 2560.503-1(c)(3). And, as noted, non-grandfathered plans must provide the opportunity for an appeal to an IRO if the final adverse benefit determination was based upon the issuer's or plan's requirements for medical necessity, appropriateness, health care setting, level of care, or effectiveness of a covered benefit. *See* 29 C.F.R. § 2590.715-2719(c)-(d) .

The plans at issue in this case work precisely in this manner. One of the plans, excerpts of which are attached as Exhibit A to Aetna's motion to dismiss, provides for two levels of internal administrative review, followed by an optional external review. *See* DE 5-4, PageID: 56. Under those procedures, participants and beneficiaries (or providers with valid assignments) are required to request an initial level one appeal within 180 days of receiving an adverse benefit determination. *Id.* That appeal is reviewed by a physician not involved in the original benefit determination. *Id.* If that first appeal is unsuccessful, the participants and beneficiaries (or providers) may file a level-two appeal within 60 days. *Id.* That appeal is reviewed by a panel of physicians and/or other health care professionals not involved in original decision. *Id.* The claimants or their representatives may attend that level-two hearing, question the plan's representatives, and otherwise present their case. *Id.*, PageID: 57.

If the denial of benefits is affirmed after this level-two appeal hearing, the participants and beneficiaries have the right to request an external review or, alternatively, to seek judicial review in federal court under § 502(a) of ERISA. The

- 9 -

Plan is clear, however, that claimants (or providers) must exhaust these remedies before "pursuing an Appeal to an independent utilization review organization (IURO) or bringing a lawsuit against Us." *Id.*, PageID: 56 (emphasis removed).

The other plans, excerpts of which are attached as Exhibits B and C to Aetna's Motion to Dismiss, also require a multi-level review of any grievances, including review by a Grievance Appeal Committee and an external appeal entity. *See, e.g.*, DE 5-5, PageID: 63-68; DE 5-6, PageID: 74-79. As with the plan discussed above, these plans specify that the appeals procedures "are mandatory and must be exhausted prior to" initiating "any litigation or arbitration." DE 5-5, PageID: 68.

Finally, ERISA plan participants and beneficiaries also must comply with the limitations period for pursuing legal action, whether set forth in the plan itself or, if the plan is silent, under provisions of state law most closely analogous to a § 502(a)(1) claim. Just this past term, the Supreme Court resolved a lingering dispute between the circuits, unanimously holding that courts "must give effect to the Plan's limitations provision," even where that limitations period begins to run before a claim has in fact accrued. *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 612 (2013).

## B.    These Reasonable Claims Procedures are Good for ERISA Participants and Beneficiaries, Plans, and Courts.

These claims procedures, expressly required by the Claims Rule, represent important safeguards that ensure the orderly and fair administration of ERISA benefits. As this Court has recognized, requiring compliance with ERISA claims

procedures—and in particular plans' exhaustion requirements—helps to "'reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a non-adversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.'" *Harrow v. Prudential Ins. Co.*, 279 F.3d 244, 249 (3d Cir. 2002) (quoting *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980)).

Plan participants and beneficiaries benefit from these administrative rules in numerous ways.  As this Court noted in *Harrow*, internal appeals allow participants and beneficiaries to seek relief in informal proceedings that are much faster, and less expensive, than running into federal court each time an insurer issues an adverse benefit determination.  *Id.*

The ERISA Claims Rule also allows participants and beneficiaries to ensure that the administrative record contains all of the evidence and arguments they believe relevant to their claims.  *See, e.g.*, 29 C.F.R. § 2560.503-1(h)(2)(ii) (requiring plans to "[p]rovide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits").  This rule has two complementary benefits for claimants.  First, the additional information might result in a reversal of the adverse benefit determination during the internal appeals process.  But even if that does not happen, the participant or beneficiary will still be able to rely on that information in any subsequent external appeal or lawsuit.  It is for this reason that the Supreme Court recently stressed it is in claimants' best interests "to develop

evidence during internal review," lest they "risk forfeiting the use of that evidence in district court." *Heimeshoff*, 134 S. Ct. at 614; *see also Das v. UNUM Life Ins. Co. of Am.*, 222 Fed. Appx. 126, 133 (3d Cir. 2007) (noting that, generally, "[a] person appealing a denial of disability cannot use the district court as a vehicle to submit evidence he failed to submit to the ERISA plan administrator").

Plans benefit too when ERISA claimants follow reasonable claims procedures. Compliance with these claims rules "enhances the ability of fiduciaries to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes." *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007) (internal quotation marks and citations omitted).  It also gives plans an additional opportunity to ensure that they are providing "consistent treatment of claims for benefits."  *Harrow*, 279 F.3d at 249.

Finally, courts also benefit from these claims rules, which have "the salutary effect of 'refining and defining the problem' for final judicial resolution."  *Price*, 501 F.3d at 279 (quoting *Amato*, 618 F.2d at 568).  And, like participants and beneficiaries, courts are best served when the parties present them a fully-developed administrative record.  *See, e.g.*, *Jin Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002) (exhaustion of claims procedures "enables the preparation of a more complete factual record for judicial review").

In short, all parties benefit when plan participants and beneficiaries follow their plans' reasonable claims procedures.

**C.    Courts Enforce These Reasonable Claims Procedures In Suits Brought Directly by Participants and Beneficiaries as Well as in Derivative Suits Brought by Providers.**

In light of these well-recognized benefits of requiring compliance with reasonable ERISA claims procedures, it is unsurprising that courts enforce them in all ERISA cases, regardless of the identity of the plaintiff.  That includes derivative benefits cases like this one.

Courts have long held that participants and beneficiaries who fail to follow required pre-authorization procedures can forfeit any claim for benefits under their ERISA plans.  The same is true in derivative suits.  In *City of Hope Nat'l Med. Ctr. v. Seguros de Servicios de Salud*, for example, the district court noted that "[u]nder the clear terms of the policy agreement, compliance with pre-authorization procedures was a necessary prerequisite for coverage of services rendered by non-affiliated providers." 983 F. Supp. 68, 75 (D.P.R. 1997).  Because those "pre-authorization procedures were never complied with" in that case, "there was no coverage available under the policy, and [the provider] cannot recover from [the plan] for the services it provided [the beneficiary]."  *Id.* at 75-76; *see also Spinal Imaging, Inc. v. Aetna Health Mgmt. LLC*, 2014 U.S. Dist. LEXIS 40099, at *44 (D. Mass. Mar. 26, 2014) (granting summary judgment to Aetna where "the relevant plan required prior authorization for services rendered by non-network providers" and "Aetna did not authorize the services provided by Plaintiffs and denied the claim on that basis").

Likewise, "[t]he courts of appeals have uniformly required that participants exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)." *Heimeshoff*, 134 S. Ct. at 610. Once again, the same rule applies in derivative benefits cases. In *Jin Zhou v. Guardian Life Ins. Co. of Am.*, for example, the Seventh Circuit upheld the dismissal of derivative ERISA claims brought by an assignee that failed to exhaust the remedies available under the plan. 295 F.3d at 679. The Eleventh Circuit did the same in *Variety Children's Hosp. v. Century Medical Health Plan*, where the court held that the district court properly dismissed the claims of a children's hospital that "neither pleaded nor recited facts showing that it had exhausted its administrative remedies under the plan." 57 F.3d 1040, 1042 (11th Cir. 1995); *see also Zaslow v. Miles*, 1998 U.S. Dist. LEXIS 19187, 7 (E.D. Pa. Dec. 9, 1998) ("[T]he assignee of a Plan participant must exhaust available remedies under the Plan before seeking relief in court.").

Finally, as with participants and beneficiaries, courts have held that the providers' failure to timely file a derivative claim within the relevant statute of limitations bars them from seeking relief under ERISA. *See, e.g.*, *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt., Inc.*, 182 F.3d 51, 57 (1st Cir. 1999).

In short, when a provider stands in the shoes of an ERISA participant or beneficiary by virtue of a valid assignment, it must trace all of the same steps that would be required of that participant or beneficiary if he wished to bring his own suit in federal court. Thus, if the Court finds that Plaintiff has standing and remands this

- 14 -

case to the district court, it should be careful not to suggest that the mere fact of a valid assignment is sufficient to permit the litigation to go forward. Rather, this Court should direct the district court to evaluate whether the relevant claims rules have been satisfied. As with any suit under § 502(a), NJBSC must be prepared to show, among other things, that any necessary preauthorization was obtained, and that the provider exhausted all appeals required by the plans.[4]

---

[4] The district court noted Aetna's assertion that NJBSC did not exhaust all required levels of administrative appeal, but declined to reach that issue because it held that NJBSC lacked standing. *See* Plaintiff's Appendix, pp. 9-10 n.1 (DE 10, PageID: 129-130 n.1). To be sure, the court held that it likely would find the complaint sufficient to survive a motion to dismiss. *Id.* But that passing comment would not prevent the court, on any remand, from assessing whether the allegations in the complaint are sufficient to allege exhaustion. Numerous courts have dismissed ERISA claims without prejudice where plaintiffs "neither pleaded nor recited facts showing that it had exhausted its administrative remedies under the plan," *Variety Children's Hosp.*, 57 F.3d at 1042, including district courts in this Circuit. *See, e.g.*, *Casatelli v. Horizon Blue Cross Blue Shield*, 2010 U.S. Dist. LEXIS 95928, at *22 (D.N.J. Sept. 13, 2010) (dismissing a claim without prejudice where the provider plaintiffs' own allegations make clear that they exhausted only some of the required administrative appeals); *Menendez v. UFCW Local 888 Health Fund*, 2005 U.S. Dist. LEXIS 17034, at *6 (D.N.J. Aug. 11, 2005) (dismissing a claim without prejudice where the complaint made only "a conclusory statement that Plaintiff has been denied meaningful access to the Plan's administrative procedures and that resorting to such procedures would be futile"). The district court would be free to do the same here.

## CONCLUSION

For the foregoing reasons, this Court should affirm the judgment of the district court.  If it does reverse, the Court should be careful not to suggest that the mere presence of a valid assignment is sufficient to permit this case to proceed if NJBSC or the beneficiaries failed to comply with any of the reasonable claims procedures specified by the ERISA Claims Rule or the relevant plans.


Respectfully submitted,

*s/Michael P. Abate*
Michael P. Abate
(Ky. Bar: 95259; IL Bar: 6285597)
Dinsmore & Shohl LLP
801 Pennsylvania Ave., N.W.
Suite 610
Washington, DC 20004
(202) 372-9125

*Counsel for Amicus Curiae*
*America's Health Insurance Plans*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 35(a)(5) and (6) because it has been prepared in 14-point Garamond, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitations of Fed. R. App. P. 29(d) because it contains 3,853 words, excluding the parts of the brief exempted under Fed. R. App. P. 32(a)(7)(B)(iii), according to the count of Microsoft Word.

*s/ Michael P. Abate*
Michael P. Abate

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2014, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.


*s/ Michael P. Abate*
Michael P. Abate


7250643v2